---
. Main *v.* Green.
---

---

## MAIN *vs.* GREEN.

[This cause is reported 32d Barbour, 448. The following opinion, delivered by Justice GOULD, not having been furnished in time to be published in connection with the case, is inserted in this place. It is to the same effect as the opinion of Justice HOGEBOOM.]

GOULD, J. Independently of the views, (subsequently expressed,) as to the rights of the parties at common law; I would first remark that the court of appeals (19 *N. Y. Rep.* 105) has held that the act of 1805, (and its subsequent re-enactments,) in connection with other statutes still remaining in full force, at the very least, gave to the lessor's interest

Main *v.* Green.

in a lease in fee reserving rent, with conditions of re-entry, &c., an *assignable quality*—made it an estate transferable by conveyance or devise; *made it,* for all purposes of transfer and the rights to enforcement by law, *a reversion.* (19 *N. Y. Rep.* 83.) Under the operation of those provisions many of these *statute reversions* were actually transferred; some by deed, some by devise; and among them those to enforce which these suits are brought.

As the statute law stood prior to April 14, 1860, there is no doubt that the plaintiff must prevail; according to the cases above cited from 19 *N. Y. Rep.* But on the 14th April, 1860, an act was passed which says that this statute of 1805, and its subsequent repetitions by re-enactment, "*shall not apply* to deeds of conveyance in fee," made before April 9, 1805, or to such deeds made after April 14, 1860. The *form* of the *one* section thus referred to (for it must be noted that the two preceding sections, to which this one refers, are not touched by this act of 1860) *differs very materially* from the form of this act of 1860. (*Sess. L.* 1860, *p.* 675, *ch.* 396. 3 *R. S. 5th ed. p.* 37, § 19, *orig.* § 25.) The later law speaks of "deeds of conveyance in fee;" the older section, of "grants or leases in fee reserving rents." The older gave *construction* to two prior sections, which spoke of the "*grantor* or lessor," and of the "*grantee* or lessee;"—in cases of *grants reserving rents,*—which *are leases.* And the two forms—"deeds of conveyance in fee," and "grants or leases in fee, *reserving rents"*—are of entirely different import. Construed each by itself, the former means a conveyance of a *fee simple absolute;* and the latter means a grant to one and to his heirs forever, *conditioned* upon and containing covenants for, the *payment forever,* of a yearly rent. And it would need no legislation to prevent courts from applying to a fee simple absolute, a statute concerning a perpetual estate subject to a perpetual rent created by a lease in fee. *In terms,* therefore, the act of 1860 does "not

apply" to the grants in fee reserving rents, on which these suits are founded : as in equity it should not, since the lessor's or grantor's interest in them was transferred to the present plaintiffs some years prior to this act of 1860, and thereby the right to them became fixed and vested.

And it is in regard to these, that these defendants claim that this act of 1860 has raised a *perpetual bar to any recovery, in any form,* by these plaintiffs. That is to say, we are called on to give to the act of 1860, a construction, (differing from its terms,) which shall operate to *destroy utterly* the *property*—the *legislative reversion*—of which the plaintiffs are *bona fide* purchasers ; and this is to be effected by taking away *all and every remedy* for the enforcement of these rights of property. By thus denying to them all the incidents of property, we should put them without the pale of legal protection, and annihilate their value. They would cease to be property. Nothing but the most explicit and clear statute could furnish a color for calling on us to do such a thing. And no matter how explicit the act, our attempting so to enforce it would be in manifest contravention of the constitution ; as it would be depriving a citizen of his property (arbitrarily and) without due process of law. Are we not bound then to presume that the legislature did not intend any such thing ; and that their law means *no more* than it says ?

But, as intimated above, we must bear in mind that the court of appeals, in regard to just such leases as those before us, has decided (19 *N. Y. Rep.* 85) that "if the statute (of 1805) had not been passed, the assignee (of the lessor) could have prosecuted, *in the name* of the *grantor* or his heirs, for the benefit of the equitable owner." And, also, that the act of 1805 did not alter the liability of the lessee or his assignee, or charge the land with the burden ; but, at most, merely enabled the assignee of the lessor to prosecute *in his own name.* And, further, in substance, that the code (§§ 69, 111,) has, independently of the act of 1805, done

precisely this same thing, as to the assignee's prosecuting in his own name. (*See also* 19 *N. Y. Rep.* 105, 106.)

In view of the decisions of the same court, in the cases above cited, that under a lease in fee reserving a perpetual rent, (or rent in fee,) with covenants and conditions for re-entry, &c., the rent was at common law a good one in the hands of the lessor and his heirs forever, against the lessee and his assigns forever. How is it possible to escape the effect of the code, (as above,) which is not touched by the act of 1860 ? Must we not hold that, at the very least, the chose in action—the rent—being assignable in equity (without any aid from the statutes) has been actually and well assigned ? And that, now, "the true party in interest"—the assignee—*must* prosecute for its enforcement in his own name, which-ever remedy he seeks—on the covenant, or in ejectment ?

We should not, however, lose sight of the fact, that in our general term it was held that, at *common law*, the rent of such a lease was valid against the lessee and his assigns for ever, and could be enforced against the land by re-entry ; and that, (also at common law,) the lessor, his heirs and *assigns* forever, were entitled to it, and to enforce it, by any appropriate remedy. This view of the law (as above stated) has been affirmed, by the court of appeals, in all respects except as regards the *assigns* of the lessor ; and as to that point, it is called doubtful, but not reversed.(*a*) Have we any other proper course, but to proceed according to our own decision ?—leaving it to the court of appeals to say whether or not this point remains doubtful, or shall be held as it was in this court.

I see no course but to *affirm* all the judgments.

(*a*) I would here note an English authority, not before cited in these cases ; 2 *Saund.* 98, *n.* 1 ; where a person seised of *a rent in fee, conveyed it by deed,* and the conveyance was held good—at common law.